Date signed April 11, 2007



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| MELVIN WATSON | * | Case No. | 06-11948DK |
| ARETHA WATSON | * | Chapter | 13 |
| | * | | |
| | * | | |
| Debtors | * | | |

### MEMORANDUM OPINION

Before the court for consideration is the Debtors' Second Amended Chapter 13 Plan, as further amended on the record at a hearing on September 12, 2006, and the objection to confirmation thereof filed by creditor agent eCast Settlement Corporation. After the hearing, the court took the matter under advisement and provided the parties with an opportunity to provide supplemental memoranda containing points and authorities.[1]

Debtors filed this Chapter 13 case on April 7, 2006. Debtors initially filed a Chapter 13 plan which proposed to pay monthly to the Chapter 13 trustee $548 for 60 months. eCast, the agent for five different unsecured creditors which together represent an alleged 21% of the unsecured claims, objected to that plan. Although the Debtors thereafter amended their plan, they did not change the amount being

---

[1]Additional memoranda were filed by eCast, the United States Trustee, the Chapter 13 Trustee assigned to this case, the Debtors, and the three other Maryland standing Chapter 13 trustees.

paid into the plan.  Upon an objection to the amended plan by eCast (and also at the urging of the

Chapter 13 trustee), Debtors filed a Second Amended Plan which proposed payment to the Chapter 13

trustee of $548 for the first four months and $689 for the remaining 56 months.  At the hearing held

upon the Debtors' Second Amended Plan, the Chapter 13 trustee informed the court that Debtors had

agreed to further amend their plan to include another increase in monthly payments, this time to $750,

for the final 55 months of the plan.  The court notes that Debtors subsequently have not filed such a

third amended plan.

At the September 12, 2006 hearing, the parties stipulated that the Debtors' income exceeds that

of the median family income.[2]  The parties further stipulated that Debtors own two vehicles, and neither

of those vehicles is collateral for a secured debt that requires monthly installment payments.  On Form

B22C, Debtors  listed as an allowable expense (as further defined below) both an operating allowance

and ownership allowance for each vehicle.  eCast and the other interested parties dispute Debtors'

entitlement to the ownership allowance because the Debtors do not have secured payments due as

payment for the vehicles.

All of the parties agreed at the initial hearing that if Debtors are not entitled to claim such

expense as part of the analysis required by 11 U.S.C. 707(b)[3], Debtors would be unable to confirm a

plan unless the court found that "projected disposable income" for purposes of Section 1325(b)(1) was

---

[2]The Debtors' Amended Official Form B22C lists Debtors' annualized "current monthly income" (line 21) as $74,241.24, whereas the applicable median family income is $60,541.00. "Current monthly income" is defined in Section 101(10A) and is an average of debtors' monthly income for the six month period immediately preceding the commencement of the bankruptcy case.  Under this definition "current monthly income" may not reflect debtor's actual income on the petition date, or at any point in time during the bankruptcy case.  The Code defined term, "current monthly income" is hereinafter referred to as "CMI."

[3]Hereafter, all code sections refer to the United States Bankruptcy Code found at title 11 of the United States Code.

not required to be the "disposable income" calculated pursuant to Section 707(b), as reflected on Form B22C.  The Debtors' actual expenses on Schedule J differ significantly from those set forth under Section 707(b).[4]

The first issue raised is whether, when applying the means test of Section 707(b),  Debtors are entitled to deduct as allowable expenses both ownership and operational vehicle expenses where the subject vehicles are not subject to liens.  eCast, citing caselaw from other jurisdictions which have confronted this question, dispute that Debtors should be allowed to so deduct.  The Chapter 13 trustee and United States Trustee, while admittedly more focused on the second part of the analysis, support eCast's position on this issue.

The second question, of equal divisiveness in caselaw,  is the issue of whether the court must restrict its confirmation analysis to the final number shown on Form B22C, or whether the court may also take into account other evidence regarding income and expenses of Debtors at the time confirmation is considered.

Section 707(b) provides that the court may dismiss a Chapter 7 case of an individual debtor whose debts are primarily consumer debts, or convert such case to a case under Chapter 11 or Chapter 13 with the debtor's consent, if the court finds that granting relief under Chapter 7 would be an abuse of that Chapter.  The Bankruptcy Abuse Prevention And Consumer Protection Act of 2005 (hereinafter "BAPCPA") amended this section to include, inter alia, new subparagraph (b)(2).  Under this new provision, in certain cases, the court shall presume abuse exists if the debtor's CMI,  reduced by amounts determined under clauses (ii), (iii) and (iv) and multiplied by 60, is not less than the lesser of: (A) $10,000.00, or (B) the greater of 25% of the debtor's non-priority unsecured claims in the case or

---

[4]Debtors did not present any evidence at hearing, but Debtors' counsel made reference to the large student loan payment reflected on Schedule J, which is not considered on Form B22C.

3

$6,000.00.  11 U.S.C. § 707(b)(1).[5]

The calculations of expenses under Section 707(b)(2) become relevant and applicable to the issue of confirmation of a debtor's plan in a Chapter 13 case by virtue of Section 1325(b).  That subparagraph provides in substance that if the Trustee or holder of an allowed unsecured claim objects to confirmation, the court may approve the plan only if, as of the effective date of the plan, the value of property to be distributed under the plan on account of such claims is not less than the amount of such claims, or the plan provides that all of the debtor's "projected disposable income" to be received during the applicable commitment period of the plan will be applied to make payments to unsecured creditors under the plan.  11 U.S.C. § 1325(b)(1)(A) and (B).  The term "disposable income" for purposes of Section 1325(b)(1)(B) is defined therein as CMI received by the debtor (other than child support payments, foster care payments or disability payments for a dependent child to the extent reasonably necessary to be expended for such child) (hereinafter "adjusted CMI"), less "amounts reasonably necessary to be expended" for the maintenance or support of the debtor or dependent of the debtor, charitable contributions to a qualified religious or charitable entity up to 15% of debtor's gross income, and expenditures necessary for the continuation, preservation and operation of a debtor's business.  11 U.S.C. § 1325(b)(2).

BAPCPA added new subsection 1325(b)(3) as to the determination of "amounts reasonably necessary to be expended."  Where the debtor's adjusted CMI when multiplied by 12 is greater than the applicable median family income for the State (based on household size as provided in Section 1325(b)(3)(A), (B), or (C)), then "amounts reasonably necessary to be expended" under subsection 1325(b)(2) shall be determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2).

---

[5]The standards enunciated in Section 707(b)(2)(A)(i) are applicable only if the CMI of the debtor (as defined under Section 101(10)(A)) combined with the income of the debtor's spouse, when multiplied by 12 is more than the median family income of the applicable state as described in Section 707(b)(7)(A) and (B).  11 U.S.C. § 707(b)(7).

Boiled down, in a Chapter 13 case in which a party-in-interest has objected to confirmation, a plan can only be confirmed if the plan pays 100% of the allowed claims provided for in the plan, or the plan provides that all of the debtor's "projected disposable income" would be applied to make payments to unsecured creditors for the period of the plan.   In determining "projected disposable income," "disposable income" shall be the adjusted CMI of the debtor minus "amounts reasonably necessary to be expended" for support and maintenance of the debtor and debtor's family, certain charitable contributions, and debtor's business expenses.  If the debtor's CMI multiplied by 12 exceeds the median family income applicable to the debtor's household, "amounts reasonably necessary to be expended" are determined as provided under Section 707(b)(2)(A)(ii):

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

11 U.S.C. § 707(b)2)(A)(ii)(I)(in part).  This provision further adds to such expenses the enumerated items set forth in Section 707(b)(2)(A)(ii) (II, III, IV and V), (iii) and (iv).  This calculation of expenses is hereinafter referred to as "the Allowable Expenses."

Courts are split concerning the application of Local Standards as set forth in Section 707(b)(2)(A)(ii)(I) as such standards apply to motor vehicles owned by the debtor.  The Local Standards include a standard for transportation which in turn includes an allowance for vehicle ownership (hereinafter "Local Ownership Allowance") and an allowance for vehicle operating costs.  See http://www.irs.gov/individuals/article/0,,id=96543,00.html.  In addition, the Allowable Expenses include the debtor's average monthly payment on account of secured debts and any additional payments to secured creditors necessary for the debtor under a Chapter 13 plan to maintain possession of certain property, including motor vehicles, which are necessary for the support of the debtor and debtor's

5

dependents and which vehicles serve as collateral for such secured debts. 11 U.S.C. § 707(b)(2)(A)(iii). Although perhaps not clearly stated in the statute, courts have held and this court agrees, that a debtor is not entitled to include the aggregate of the Local Ownership Allowance, plus the average monthly loan payment for that vehicle, in calculating the Allowable Expenses. As explained in In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006), "[t]he effect of section 707(b)(2)(A)(ii)(I) is to permit the debtor to deduct the greater of her actual mortgage and car ownership payments or the amounts provided in the Local Standards." Id. at 727 (emphasis added). Notwithstanding this pronouncement, some opinions, including the opinion in the In re Hardacre case, interpret these statutory provisions to mean that the debtor is not entitled to any ownership allowance for a motor vehicle which the debtor owns, unless the debtor owes a secured debt for which the subject vehicle is collateral. See also, In re Sorrell, __ B.R. __, 2007 WL 211276 (Bankr. S.D. Ohio, January 26, 2007); In re Slusher, __B.R. __, 2007 WL 118009 (Bankr. D. Nev., January 17, 2007); In re Devilliers, __B.R. __, 2007 WL 92504 (Bankr. E.D. La., January 9, 2007); In re Harris, 353 B.R. 304 (Bankr. E. D. Okla. 2006); In re Johnson, 2006 WL 2883243 (Bankr. M.D.N.C. 2006); In re Oliver, 350 B.R. 294 (Bankr. W.D. Tex. 2006); In re Lara, 347 B.R. 198 (Bankr. N.D. Tex. 2006); In re Barraza, 346 B.R. 724 (Bankr. N.D. Tex. 2006); In re McGuire, 342 B.R. 608 (W.D. Mo. 2006).[6]

Other recent opinions have permitted a debtor to take the Local Ownership Allowance for vehicles owned by the debtor even though the vehicles are not encumbered by liens. See, e.g., In re Enright, 2007 WL 748432 (M.D.N.C., March 6, 2007); In re Fowler, 349 B.R. 414 (Bankr. D. Del. 2006); In re Demonica, 345 B.R. 895 (Bankr. N.D. Ill. 2006). This court finds particularly persuasive

---

[6] Some of those courts which have not permitted the debtor to take the Local Ownership Allowance for an unencumbered vehicle have in turn split as to whether the debtor is entitled to an additional allowance per vehicle of $200.00 where the vehicle is more than six years old or has mileage over 75,000, as provided in section 5.8.5.5.2 of the Internal Revenue Manual. See In re Johnson, 2006 WL 2883243 at *3 fn.9; In re McGuire, 342 B.R. at 612.

the reasoning of the United States Bankruptcy Court for the District of Delaware in <u>In re Fowler</u>, 349 B.R. at 418-421.

Those courts which have disallowed the application of the Local Ownership Allowance for an unencumbered vehicle, have done so by applying language contained in the Internal Revenue Manual (the "IRM"), a publication of the Internal Revenue Service that provides guidance to revenue collectors. As explained by Judge Mary F. Walrath in the opinion in <u>In re Fowler</u>, 349 B.R. at 416, the Collection Financial Standards are published by the Internal Revenue Service to determine a taxpayer's ability to pay a delinquent tax liability. The Financial Analysis Handbook contained in part 5, chapter 15, section 1 of the IRM provides instructions to IRS agents for analysis of a taxpayer's financial condition to determine case resolution. Under the IRM, as to Local Standards, for tax collection purposes, the agent is instructed to allow the debtor the lesser of the actual amount paid or the Local Standards. But, Section 707(b)(2)(A)(iii) explicitly provides that in determining Allowable Expenses, the debtor's actual average monthly payments on account of secured debts are to be included. Thus the explicit direction of the Bankruptcy Code as to determination of Allowable Expenses for a determination of "amounts reasonably necessary to be expended" is different than the use of the Local Standards for collection of taxes under the guidance of the IRM.

The court in <u>In re Hardacre</u> acknowledges this difference in reaching its conclusion that a debtor is entitled to the <u>greater</u> of the Local Standards or debtor's actual expenditure. However, it appears that the <u>In re Hardacre</u> opinion then relies upon the IRM to disallow the Local Ownership Allowance for an unencumbered vehicle. With that disallowance, this court must respectively disagree. Instead this Court agrees with the holding in <u>In re Fowler</u> that the Local Standards referred to by Section 707(b)(2)(A)(ii)(I) of the Bankruptcy Code, do not include the guidance set forth in the IRM for tax collectors. Congress clearly intended that the Bankruptcy Code direct how the Local Standards are to

be employed in determining the Allowable Expenses.

> [S]ince the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments. This approach reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing.

In re Fowler, 349 B.R. at 418-19 (quoting Wedoff, Means Testing in the New World, 79 Am. Bankr. L.J. at 255-57. Without the belaboring the issue further, this court adopts not only the conclusion but the reasoning set forth in In re Fowler.

Having determined the applicability of the Local Ownership Allowance in determining "disposable income" under Section (b)(2), the remaining issue is the relationship between "disposable income" and the "projected disposable income" that may be required to be applied to payments under the plan pursuant to Section 1325(b)(1)(B). The Debtor, Chapter 13 trustee, and eCast urge the court to reject any approach which would find that "projected disposable income" is required to be calculated merely in accordance with the definition of "disposable income" in Section 1325(b)(2), such calculation for an above means income debtor essentially being the debtor's adjusted CMI, less the Allowable Expenses.

Prior to BAPCPA, the typical Chapter 13 debtor would calculate "projected disposable income" to be committed to a plan on the basis of debtor's actual income and reasonable expenses. This would often be reflected by subtracting the Schedule J expenses from the income listed on Schedule I.[7] If a dispute of fact arose concerning the income or reasonable expenses, the court would conduct an

---

[7]Unlike schedules of assets and liabilities which set forth a debtor's interests in property and debtor's debts as of the petition date, in a Chapter 13 case, Schedule I and J should reflect income and expenses on a current basis and thus be amended by the debtor from time to time, if debtor's income or expenses change.

evidentiary hearing to determine disputed facts including the reasonableness of expenses listed on Schedule J.

Under BAPCPA, as to a debtor whose annualized CMI exceeds the applicable median family income, courts have dramatically split on the question of the effect of the formula calculation of "disposable income" under Section 1325(b)(2) upon the determination of "projected disposable income" required under Section 1325(b)(1)(B).[8]

Several courts have held that "projected disposable income" should be based solely upon the calculation of "disposable income" (adjusted CMI minus "Allowable Expenses"), as reflected on Form B22C. These courts reason that the means test was "designed to make the determination for [above median income] debtors 'formulaic.'" In re Farrar-Johnson, 353 B.R. 224 (Bankr. N.D. Ill. 2006). See also In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006). The opinions acknowledge that the Form B22C may not accurately reflect the debtor's available income from which to make plan payments at the effective date of the plan, but find that they are limited in their consideration of outside evidence nonetheless.

The Chapter 13 trustees in this district, not surprisingly, have expressed disagreement with a

---

[8] Section 1325(b) provides in part:
(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
    (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
    (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended. . . .
11 U.S.C. 1325(b)(1) and (2).

rigid approach.  They caution that a possible result may be that a debtor who enjoys a higher level of income postpetition (as compared to the six month historical CMI calculation) may be required to pay less into the plan than would be required if the court were able to consider current income and expenses reflected on Schedules I and J.[9]  Conversely, a debtor with lower income or higher expenses may not be able to pay the amount required, which would effectively deny them relief in bankruptcy.

Yet another scenario presented itself in the In re Farrar-Johnson case.  In In re Farrar-Johnson, the trustee objected to confirmation of the debtors' plan which was based on the "disposable income" available as determined on the debtors' Form B22C.  The Allowable Expenses when applied to these debtors permitted a significant housing expense which in reality the debtors did not pay because they lived in military housing.  Id. at 230.  The trustee objected to the housing deduction, but also objected to certain expenses listed on the debtors' Schedule J.  The court rejected the trustee's position and held instead that Schedule J was irrelevant to the Section 1325(b) analysis.  Id. at 227.  The court also upheld the Form B22C housing allowance expense.  Id.  In so holding, the court wrote:

> When a chapter 13 debtor is above the median income, section 1325(b)(3) accordingly makes clear that Schedule J has no role in calculating disposable income. . . . One of the aims of the means test was to limit judicial involvement and so judicial discretion by making mechanical the determination of abuse under 707(b).

Id. at 228 (citations omitted).  Notably, in In re Farrar-Johnson, the court was not required to consider whether evidence of income beyond the CMI reflected on Form B22C was applicable to the court's determination of "projected disposable income."

In In re Alexander, the court found that both the income and expenses to be used in calculating

---

[9]The court noted in In re Alexander:
However, for the seven cases of above-median income debtors, the debtors uniformly have less disposable income using the new calculation method.  The trustees reported that this is the typical result for above-median income debtors under the new law.  Perhaps Congress, in an effort to make higher income debtors pay more to their unsecured creditors, unwittingly reached the opposite result.
Anderson, 344 B.R. at 747 (footnote omitted).

"projected disposable income"were those numbers found on Form B22C. The court rejected the holdings in In re Hardacre, 338 B.R. at 723 and In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006)(discussed, infra) and found that "[Section] 1325(b)(2)-(3) plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law." In re Alexander, 344 B.R. at 747.

Other courts have found that while the Form B22C calculation is important, such disposable income calculation is "merely a starting point and not a determinative number." In re McGuire, 342 B.R. 608, 615 (Bankr. W.D. Mo. 2006). See also In re Kibbe, __ B.R. __, 2007 WL 512753 (1st Cir. BAP, Feb. 20, 2007); In re Barraza, 346 B.R. 724, 732 (Bankr. N.D. Tex. 2006); In re Gress, 344 B.R. 919 (Bankr. W.D. Mo. 2006); In re Grady, 343 B.R. 747 (Bankr. N.D. Ga. 2006); In re Jass, 340 B.R. at 411; In re Hardacre, 338 B.R. at 722-23; In re Riggs, __B.R. __,2007 WL 601535 (Bankr. E.D. Ky., February 27, 2007).

In In re Hardacre, the court looked at the income portion of the analysis. The court noted three key points regarding the drafting of Section 1325(b) which led the court to its conclusion that Congress intended that "projected disposable income" be determined to be the expected income over the life of the plan as opposed to the historical adjusted CMI calculation. Id. at 722. First, the court recognized that in Section 1325(b)(1)(B), the word "projected" modified the term "disposable income", which term appeared without modification in Section 1325(b)(2). Id. Second, the court pointed to the phrase "to be received in the applicable commitment period" which is contained in Section 1325(b)(1)(B). Id. at 723. Finally, the court noted that Section 1325(b)(1) requires the court to determine whether a debtor is committing  sufficient funds to the plan "as of the effective date of the plan." Id.

Similarly, in In re Jass, the court found that it must view the debtors' income in a forward-looking analysis. In re Jass, 340 B.R. at 415-16. However, the court went further than the Hardacre

11

court and found that circumstances could exist whereby the court could properly review a debtor's

expenses (as opposed to just the future anticipated income) in determining projected "disposable

income." Id. at 418.  In so ruling, the court explained:

> If the Court finds adequate evidence to rebut the presumption in favor of Form B22C,
> the Court will allow the debtor to use a projected budget in the form of Schedules I and
> J to determine the debtor's "projected disposable income."  For purposes of §
> 1325(b)(1)(B), the Court will then require the debtor to propose a plan to return to
> unsecured creditors an amount consistent with those schedules.
>
> It is most likely that only in rare instances will the court consider confirming chapter 13
> plans where the "projected disposable income" does not conform with the calculations
> on Form B22C.

Id. at 418-19.

This court agrees with and adopts the court's analysis in In re Jass.

In looking to the language of a statute, the Court must consider two important
assumptions.  First, the Court must give meaning and import to every word in a statute.
Second, the Court must presume that "Congress acts intentionally and purposefully
when it includes particular language in one section of a statute but omits it in another."

The Court believes that the language of § 1325(b)(1)(B) is clear and unambiguous-
section 1325(b)(1)(B)'s requirement that a plan propose to pay projected disposable
income" means that the number resulting from Form B22C is a starting point for the
Court's inquiry only.   Section 1325(b)(2) defines "disposable income" but §
1325(b)(1)(B) requires that a debtor propose a plan paying "*projected* disposable
income." (emphasis added).  The Court must give meaning to the word "projected," as
it obviously has independent significance.  The word "projected" means "[t]o calculate,
estimate, or predict (something in the future), based on present data or trends."  Thus,
the word "projected" is future-oriented.  By definition under § 1325(b)(2), the term
"disposable income" is oriented in historical numbers. By placing the word "projected"
next to "disposable income" in § 1325(b)(1)(B), Congress modified the import of
"disposable income."  The significance of the word "projected" is that it requires the
Court to consider both future and historical finances of a debtor in determining
compliance with § 1325(b)(1)(B).

Id. at 415 (footnotes omitted).

For the reasons enunciated hereinabove, this court holds that the Local Ownership Allowance

is properly included by the debtor in the calculation of "disposable income" on Form B22C.  The Court

further holds "disposable income" as calculated on Form B22C is the presumptive "projected disposable income" for application of Section 1325(b)(1)(B).  However, by evidence a party may demonstrate "a substantial change in circumstance such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future."  Id. at 418.  If the presumption is rebutted, a projected budget based upon the evidence, reflecting projected earnings and projected reasonable necessary expenses will govern the determination of "projected disposable income" for purposes of confirmation of the plan.

A continued hearing upon debtor's plan will be held to allow presentation of evidence and determination of confirmation of the plan in accordance with the holding of this opinion.


cc:    Debtors
       Debtors' Counsel
       Chapter 13 Trustee
       U.S. Trustee
       All Creditors and Parties-In-Interest

**End of Opinion**